IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEO Z. TARR,                        )
                                    )
          Plaintiff,                )
                                    )
     v.                             )   Civ. Act. No. 08-1454
                                    )
                                    )
FEDEX GROUND PACKAGE                )
SYSTEM, INC.,                       )
                                    )
          Defendant.                )

MEMORANDUM and ORDER OF COURT

Gary L. Lancaster,
Chief Judge.                              January, 28 2010

          This is an action alleging employment discrimination.

Pro se plaintiff, Leo Z. Tarr, claims that defendant, FedEx Ground

Package System, Inc. ("FedEx Ground"), harassed him, retaliated

against him and discharged him on the basis of his race, black, and

national origin, Liberian, in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and

the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951. et

seq. ("PHRA").  Before the court is defendant's motion for summary

judgment [doc. no. 38], and plaintiff's response thereto.  For the

reasons set forth below, the motion will be granted.


     I.    FACTUAL BACKGROUND

          Unless noted otherwise below, the following facts are

undisputed.  Plaintiff is a black man from Liberia.  On September

20, 2004, plaintiff was hired as a computer consultant by Premier Technologies. Premier Technologies assigned him to work at FedEx Ground for one (1) year. Plaintiff was supervised by FedEx Ground employee Michael Smith, who reported to FedEx Ground employee Jim Cummins.

On April 20, 2005, seven (7) months after he was hired as a consultant, FedEx Ground hired plaintiff as a Developer Analyst in the AS/400 Sortation Group. Plaintiff's direct supervisor was Jeffery Matz. Plaintiff worked in a group with other developer analysts, including FedEx Ground employees Michael Tennant, Patricia Niedfeldt and Tina Driscoll. Plaintiff alleges that almost immediately upon his hire, Mr. Tennant and Ms. Niedfeldt began to ridicule his work. Plaintiff specifically contends that Mr. Tennant and Ms. Niedfeldt printed out his computer code and laughed at the errors in the code. Plaintiff also alleges that Mr. Tennant told lies about plaintiff's job performance. Plaintiff further alleges that Ms. Driscoll refused to act as his mentor. At his deposition, however, plaintiff was unable to identify any specific statements Mr. Tennant made. Plaintiff reported his concerns to Mr. Matz, who asked if he wished to report it to the Human Resources Department. Plaintiff preferred not to report the matter to the Human Resources Department at that time.

In April of 2006, Mr. Matz conducted plaintiff's annual review. Mr. Matz rated plaintiff's overall performance as "meets

2

(-) expectations."[1]   Declaration of Jeffery Matz, Doc. No. 40, Appendix Tab B at paragraph 3 (hereinafter "Matz Decl."). There is no dispute that Mr. Matz rated plaintiff as meets expectations or higher in several categories, such as Service and Customer Contact. FedEx Ground's performance review, however, assigns varying weighted averages to each of the five (5) sections, which yielded plaintiff's overall rating of 2.29995. Matz Decl. at Exhibit "1" at page 21.

Mr. Matz put plaintiff on an informal performance improvement plan, which required plaintiff to complete training courses by July 7, 2006.  Matz Decl. at paragraph 4.  After training, plaintiff was required to write a program which was to be tested by Mr. Matz and a member of plaintiff's group.  Matz Decl. at Exhibit "3".  Plaintiff was to complete the program by July 25, 2006. Id.  Plaintiff completed the program, with errors, on July 28, 2006.  Plaintiff completed a program which functioned on August 7, 2006.   Matz Decl. at paragraph 5.

In July of 2006, plaintiff and Ms. Niedfeldt had an argument.   Plaintiff contends that Ms. Niedfeldt said that plaintiff was lucky FedEx Ground had affirmative action. Plaintiff emailed Mr. Matz to complain.  Mr. Matz responded to plaintiff's

---

[1]

At the time, FedEx Ground had a rating system which assigned employees points from a low of 0 (below expectations) to a high of 5 (exceeds expectations).  Plaintiff's overall rating was 2.29995, which fell into the second lowest rating category, in between meets expectations and below expectations.

3

email and raised plaintiff's performance problems. Mr. Matz's responsive email was copied to Joellen Crichtlow, his supervisor, and Jessica McCardle, a FedEx Ground Human Resources representative. On July 30, 2006, plaintiff responded via email to Mr. Matz. Plaintiff wrote "I hope you will be bold enough to tell Human Resource [sic] during my exit interview about how I was constantly harassed by Mike Tennant and Patty Niedfeldt due to their inability to see beyond race." Declaration of Maria Robertson, Doc. No. 40, Appendix Tab C at paragraph 3 (hereinafter "Robertson Decl.")

The next day, Ms. Crichtlow forwarded plaintiff's email to Maria Robertson, the FedEx Ground Manager - Affirmative Action Compliance. Robertson Decl. at paragraph 3. Ms. Robertson and Ms. McCardle met with plaintiff to discuss his complaints. Robertson Decl. at paragraph 4. Plaintiff "alleged that Mr. Tennant and Ms. Niedfeldt were out to sabotage his work," he "recounted altercations that he had with Mr. Tennant and Ms. Niedfeldt," and he "claimed that Ms. Niedfeldt had said 'affirmative action has done a lot for people around here.'" Id. Plaintiff also "identified several co-workers who worked in the same area whom he claimed overheard his interactions with Mr. Tennant and Ms. Niedfeldt." Id.

Ms. Robertson and Ms. McCardle met individually with Mr. Matz, Ms. Crichtlow, Mr. Tennant and Ms. Niedfeldt. Robertson

4

Decl. at paragraph 5.  Ms. Robertson and Ms. McCardle also met with every employee plaintiff alleged overheard his conversations with Mr. Tennant and Ms. Niedfeldt.  Id.  At the conclusion of the meetings, Ms. Robertson and Ms. McCardle "instructed each employee to keep the contents and context of the meetings confidential and admonished that any retaliation against [p]laintiff would not be tolerated."  Id.  They also reviewed FedEx Ground's discrimination and retaliation policies with each employee.  Id.

Both Mr. Tennant and Ms. Niedfeldt denied printing out plaintiff's code or discussing his work performance.  Robertson Decl. at paragraph 6.  Ms. Niedfeldt denied making a statement to plaintiff about affirmative action, but did concede that she said to him something like "don't start this again, get away from me."  Id.  Further, no employee Ms. Robertson and/or Ms. McCardle interviewed "overheard any comment regarding affirmative action or anything to suggest that either Mr. Tennant or Ms. Niedfeldt harbored any ill will toward [p]laintiff on account of his race or national origin."  Id.

On August 30, 2006, Ms. Robertson and Ms. McCardle met with plaintiff to discuss the results of their investigation. They advised plaintiff that their investigation had not revealed any evidence to support plaintiff's claims of illegal harassment or discrimination.  Ms. Robertson informed plaintiff that "[a]fter a thorough investigation, including interviews with all parties and

potential witness and a search for other evidence, Ms. Cardle and I concluded that there were work-related conflicts between Plaintiff and Mr. Tennant and Ms. Nieldfeldt, but that there was no evidence of any illegal harassment or discrimination." Robertson Decl. at paragraph 7.   Plaintiff requested that Ms. Robertson reduce her findings to a writing, which she did by letter dated September 12, 2006. Id. See also Exhibit "1" to Robertson Decl. Plaintiff made no further complaints of discrimination to the Human Resources Department.

On October 10, 2006, a co-worker of plaintiff learned during an internet search that plaintiff had filed a charge of discrimination against his prior employer with the Illinois Department of Human Rights ("IDHR"). Robertson Decl. at paragraph 8.[2] The IDHR published an Order of Dismissal of plaintiff's charge on the internet.   Id.   The IDHR found that his prior employer terminated plaintiff for making unauthorized personal phone calls. Id.

Plaintiff represented on his application for employment at FedEx Ground that his prior employer had laid him off. Robertson Decl. at paragraph 9.  Ms. Robertson "investigated the inconsistency between [p]laintiff's employment application" and the IDHR order pursuant to FedEx Ground's Security Policy.   Id.   Ms.

---

[2]

There is no evidence of record as to who conducted the internet search and reported their findings to the FedEx Ground Human Resources department.

Robertson states that it is "FedEx Ground's practice to investigate and address all allegations of misinformation in application data ..." Id. On October 20, 2006, Ms. Robertson and Ms. McCardle met with plaintiff to discuss the matter. The next day, plaintiff submitted a letter captioned "confirmation of employment" from his prior employer. The letter confirmed the dates plaintiff worked for his prior employer and stated that plaintiff "performed his job responsibilities in a satisfactory manner." Robertson Decl. at paragraph 11. See also Robertson Decl. at Exhibit "5." Ms. Robertson states in conclusion that "[u]pon receipt of this letter ... the investigation into [p]laintiff's employment was closed with no further action." Robertson Decl. at paragraph 11.

On February 5, 2007, because plaintiff's performance had not improved, Mr. Matz placed him on a Formal Performance Improvement Plan. Matz Decl. at paragraph 6. Plaintiff was assigned to write two computer programs. Id. Plaintiff did so, within the allotted time, but, according to Mr. Matz, the programs "failed to follow program specifications, were not in a format that could be used or maintained by other personnel, did not conform to departmental standards, failed to execute without error, and, when executed, did not provide accurate reporting data." Id. As a result, Mr. Matz concluded that plaintiff failed to "achieve the goals set for him in the Formal Performance Improvement Plan, and as a result of his documented failure to adequately perform his

job" FedEx Ground terminated plaintiff on April 19, 2007.   Matz
Decl. at paragraph 7.

On June 13, 2007, plaintiff filed a complaint of
discrimination with the Pennsylvania Human Relations Commission
("PHRC").[3]   Plaintiff's complaint was dual filed with the Equal
Employment Opportunity Commission ("EEOC").   The EEOC issued
plaintiff a right to sue letter on July 25, 2008.   Plaintiff filed
this action on October 16, 2008.   In Count I, plaintiff alleges
that he was harassed by his co-workers because of his national
origin and race in violation of Title VII and the PHRA.   In Count
II, plaintiff alleges that defendant discriminatorily discharged
him on the basis of his national origin and race.   In Count III,
plaintiff alleges that defendant retaliated against him for
engaging in activity protected by Title VII and the PHRA.

II.   STANDARD OF REVIEW

The court will grant summary judgment "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled
to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   A fact

---

[3]

At various points in their papers, both parties state that
plaintiff's PHRC complaint was filed on July 13, 2007.   The court
has construed this as a scrivener's error, as it is clear from the
complaint itself that plaintiff filed it on June 13, 2007.   See
Plaintiff's PHRC Complaint, Doc. No. 40 at Appendix A page 83, 90.

is "material" only if it might affect the outcome of the case under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Factual disputes concerning issues that are irrelevant to the outcome of the case are, therefore, not considered. <u>Id</u>. Factual disputes must also be "genuine" in that the evidence presented must be such "that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>.

A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990). Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. <u>See id</u>. If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed. R. Civ. P. 56(e). Local Rule of Civil Procedure 56(E) provides that material facts "set forth in the moving party's Concise Statement ... will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56(E).

We note that plaintiff is proceeding <u>pro se</u>. Thus, he is

held to a less stringent standard than trained counsel. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). As the court of appeals has directed, we "will apply the applicable law, irrespective of whether [plaintiff] has mentioned it by name." [4]   <u>Dluhos v. Strasberg</u>, 321 F.3d 365, 369 (3d Cir. 2003). While "'district courts are counseled to liberally construe <u>pro se</u> pleadings, all parties must follow the Federal Rules of Civil Procedure.'" <u>Riley v. Shinseki</u>, 2009 WL 2957793 at *4 (W.D. Pa. Sept. 10, 2009)(quoting <u>Thomas v. Norris</u>, 2006 WL 2590488 at *4 (M.D. Pa. Sept. 8, 2006)). In addition, <u>pro se</u> plaintiffs are also bound by the Local Rules of Civil Procedure. Thus, plaintiff "still has before him the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'" <u>Zilich v. Lucht</u>, 981 F.2d 694, 696 (3d Cir. 1992)(quoting <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248.

Plaintiff also appears to claim that defendant's motion for summary judgement should be denied pursuant to Fed.R.Civ.P. 56(f). <u>See</u> Plaintiff's Response to Defendant's Motion for Summary Judgment, Doc. No. 43, at page 6. The court of appeals has "repeatedly noted the need for a party moving under Rule 56(f) to accompany the motion with a supporting affidavit detailing 'what

---

[4]

Thus, we have construed his complaint as alleging violations of both Title VII and the PHRA. It is well established that the same analysis applies to both statutes. <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 425 n. 3 (3d Cir. 2001). The PHRA claim will not, therefore, be discussed separately.

particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained.'" Doe v. Abington Friends School, 480 F.3d 252, 255 n. 3 (3d Cir. 2007)(quoting Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3d Cir. 1988)). Even if we construe plaintiff's statements as a motion under Fed.R.Civ.P. 56(f), and excuse him from the affidavit requirement, he still must comply with Fed.R.Civ.P. 56(e). Specifically, pursuant to Fed.R.Civ.P. 56(e), a pro se plaintiff must provide an "affidavit or other evidentiary material to dispute defendants' affidavit to the contrary ... an adverse party may not rest upon mere allegations in his pleadings, and any inconsistency does not give rise to a disputed question of material fact." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 420 n. 10 (3d Cir. 2000).

## III. DISCUSSION

Plaintiff alleges that he was harassed by his co-workers, retaliated against for engaging in protected activity and ultimately terminated on the basis of his race and national origin in violation of Title VII and the PHRA. Defendant first argues that plaintiff failed to file a timely charge of harassment. Defendant further contends that the evidence of record establishes that plaintiff was not subject to harassment by any FedEx Ground employee. Defendant further argues that there is no genuine

11

dispute of material fact that it discharged him for poor performance.   Defendant also argues that it did not retaliate against him for engaging in protected activity.

### A.   Count I - Harassment

#### 1.   Timeliness

Defendant contends that plaintiff failed to timely file a complaint of harassment by his co-workers with the PHRC. Plaintiff filed a complaint of discrimination with the PHRC on June 13, 2007.   Defendant contends that, according to undisputed facts of record, the last alleged act of harassment plaintiff complains of occurred on July 30, 2006, more than three hundred (300) days before plaintiff filed his charge with the PHRC[5].

Under Title VII, plaintiff has one hundred and eighty (180) days to file an administrative charge of discrimination with the EEOC.   42 U.S.C. § 2000e-5(e)(1).   Where there is a work sharing agreement between the EEOC and the local fair employment practices agency, as there is between the EEOC and the PHRC, the statutory filing period is enlarged to three hundred (300) days. Id.;   See also 29 C.F.R. § 1626.7;   Callowhill v. Allen-Sherman-Hoff Co., Inc., 832 F.2d 269, 271 (3d Cir. 1987).

Defendant claims that the last act of harassment

---

[5]    Defendant terminated plaintiff on April 19, 2007. There is no dispute that plaintiff filed a timely charge of discrimination with respect to his claims of discriminatory discharge and retaliation.

plaintiff complains of occurred on or before July 30, 2006, more than 300 days before he filed his complaint with the PHRC. Plaintiff appears to argue that his harassment claim is timely pursuant to the continuing violations theory. As the court of appeals has explained a plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period "if he can demonstrate the act is part of an ongoing practice or pattern of discrimination of the defendant." Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481 (3d Cir. 1997). In order to avail himself of the continuing violations theory, plaintiff must show that at least one discriminatory act occurred within the filing period and that the harassment was more than isolated, sporadic acts of intentional discrimination. Id. Relevant to this inquiry is the subject matter, frequency and permanence of the discriminatory conduct. Id.

Here, plaintiff admitted in his deposition that he was not subject to harassment by his co-workers after he complained to his supervisor on July 30, 2006. In his complaint, however, he alleged that the harassment continued after he reported it to his supervisor. In light of plaintiff's pro se status, we will assume, without deciding, that plaintiff has set forth sufficient evidence to make his harassment claim timely under the continuing violations theory.

2.    Hostile Work Environment

13

Plaintiff alleges that FedEx Ground employees harassed him because of his race and/or national origin in violation of Title VII.   Title VII prohibits an employer from discriminating "against any individual with respect to ... compensation, terms, conditions, or privileges of employment because of such individual's ... race ... or national origin".  42 U.S.C. § 2000e-2(a)(1).  Racial harassment that creates a hostile work environment violates Title VII.   Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999)(analyzing sex harassment claim).   The same standards govern claims alleging hostile work environment based on a plaintiff's race as govern claims of hostile work environment based on a plaintiff's sex.   West v. Philadelphia Elec. Co., 45 F.3d 744, 753 n. 7 (3d Cir. 1995).

It is plaintiff's burden to prove that the harassment created a hostile work environment.[6]   Huston v. Procter & Gamble Paper Products Corp., 568 F.3d 100, 104 (3d Cir. 2009).  Plaintiff must prove the following: (1) that he suffered intentional discrimination because of his race or national origin; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected plaintiff; (4) that the discrimination would detrimentally affect a reasonable person of

---

[6]

Plaintiff has not alleged that he was harassed by any supervisory level FedEx Ground employees.  Cf Huston, 568 F.3d at 104 (explaining the difference between claims of supervisory harassment and claims of co-worker harassment.)

14

the same race or national origin in that position; and (5) respondeat superior liability. Id. at 104.

Plaintiff claims that his co-workers: (1) sabotaged his computer code so that previously working programs stopped working; (2) told lies about his performance; (3) refused to give him needed instruction; and (4) made a remark about his being the beneficiary of affirmative action[7]. However, plaintiff has adduced no evidence to support his claims. Plaintiff has presented nothing other than the unsworn allegations in his complaint and his conclusory arguments. Further, as set forth below, even if plaintiff's allegations are taken as true, he has not, and cannot, prove the existence of respondeat superior liability.

Even if plaintiff could present sufficient evidence to create a genuine issue of material fact that his co-workers harassed him, he cannot show that FedEx Ground is liable for their alleged conduct. "[E]mployer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." Huston, 568 F.3d at 104. The court of appeals has held that "[a]n employer will be liable for the harassing conduct of the alleged victim's coworker if the employer

---

[7]

Plaintiff also makes a number of references to being denied a laptop by FedEx Ground, but he has presented no evidence in support of this allegation.

was 'negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of the harassment.'" Andreoli v. Gates, 482 F.3d 641, 644 (3d Cir. 2007)(quoting Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 (3d Cir. 1997)).   The court of appeals continued that "[e]ven if the remedial action does not stop the alleged harassment, it is  adequate if it is reasonably calculated to end the harassment."   Id. (citation and internal quotation omitted).   Further, "[a] remedial action that stops the harassment is adequate as a matter of law."   Id. at n. 2 (citing Knabe v. Boury Corp., 114 F.3d 407, 411, n. 8 (3d Cir. 1997).

Here, plaintiff has identified no evidence that the alleged "harassment ... [was] so severe or pervasive that it alter[ed] the conditions of [his] employment and create[d] an abusive working environment."   Even assuming that plaintiff could prove the other elements of a hostile work environment claim, he has presented  no evidence that the harassment continued after FedEx Ground's investigation was concluded.   Plaintiff conceded that the alleged harassment stopped after FedEx Ground conducted an investigation of his allegations.   See Plaintiff's Deposition, Doc. No. 40 at Tab A page 27.   Thus, as a matter of law, FedEx Ground's response was adequate.   FedEx Ground's motion for summary judgment of Count I will be granted.

C.   Count II - Discriminatory Discharge

In Count II, plaintiff alleges that he was discharged

16

because of his race and national origin and that FedEx Ground's articulated reason for discharging him namely, poor performance, was a pretext for discrimination. Specifically, plaintiff asserts that the fact that FedEx Ground hired him as a full time employee after completing seven (7) months of his consulting job establishes that his job performance was adequate. Plaintiff contends, therefore, that FedEx Ground's characterization of his performance as poor is pretextual. Apparently in the alternative, plaintiff contends that he was unable to perform his job adequately because defendant assigned Mr. Tennant and Ms. Driscoll to him as a mentor. Plaintiff alleges that Mr. Tennant and Ms. Driscoll refused to help him because of his race and national origin. Plaintiff further alleges that FedEx Ground denied him a laptop, which made it impossible for him to do his job. In his complaint, plaintiff asserts that employees outside his protected classes were given laptops.

FedEx Ground argues that it is entitled to summary judgment on this claim because plaintiff cannot establish a prima facie case of discrimination. FedEx Ground further argues that plaintiff cannot prove that the reasons for its decision to terminate plaintiff were pretextual. FedEx Ground argues that plaintiff has not, and cannot, present any evidence that discriminatory animus played any part in its decision to terminate plaintiff.

The court of appeals has opined that "[a] Title VII plaintiff may state a claim for discrimination under either the pretext theory set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or the mixed motive theory set forth in     Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)..." Makky v. Chertoff, 541 F.3d 205, 213 (3d Cir. 2008). If proceeding under the mixed-motive theory, "a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons." Id. The court of appeals observed that, in order to alleviate some confusion regarding the application of the Price Waterhouse test

> ... Congress enacted two new statutory provisions geared toward setting the applicable standard in a mixed-motive case. The first provision stated: "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

Makky, at 213.

The second provision gave the employer a limited affirmative defense to "demonstrate that it would have taken the same action in the absence of the impermissible motivating factor." Id. (quoting Desert Palace Inc. v. Costa, 539 U.S. 90 (2003) and 42 U.S.C. § 2000e-5(g)(2)(B)). We discuss each theory in turn.

### 1.   McDonnell Douglas

Under the McDonnell Douglas test, plaintiff must first establish a prima facie case. To do so, plaintiff must show that:

18

(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of discrimination. McDonnell Douglas, 411 U.S. at 802. Plaintiff bears the initial burden of proving a prima facie case by a preponderance of the evidence. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If plaintiff establishes a prima facie case of discrimination, the burden shifts to defendant to "articulate some legitimate non-discriminatory reason for the employee's termination." McDonnell Douglas at 802. If defendant does so, the burden shifts back to plaintiff to produce evidence "that the employer's proffered reasons were merely a pretext for discrimination, and not he real motivation for the unfavorable job action." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).

Plaintiff appears to attempt to argue that he can establish a prima facie case of discrimination and prove that Fed Ex Ground's reasons for terminating him was a pretext for discrimination. Specifically, plaintiff seems to claim that FedEx Ground's decision to hire him after he served as a consultant establishes that he was qualified for the job. In what can only be described as an alternative argument, plaintiff contends that he

19

was prevented from doing his job because his co-workers subjected him to a hostile work environment.  However, as set forth above, plaintiff has adduced no evidence of harassment.

Further, plaintiff has not adduced any evidence sufficient for a reasonable trier of fact to find that FedEx Ground terminated him because of his race or national origin.  Rather, the record is rife with examples of plaintiff's performance problems.  Plaintiff repeatedly failed to complete functioning computer programs on time.  Accordingly, even if plaintiff could establish a prima facie case, which we will assume but not decide for purposes of evaluating FedEx Ground's motion for summary judgment, plaintiff cannot cast doubt on FedEx Ground's articulated legitimate non-discriminatory reasons for terminating him.  Simply put, plaintiff was terminated for poor performance.

### 2.  Mixed Motive

If plaintiff were to proceed under a mixed motive theory, he could not prevail at trial.  Even under this theory, plaintiff would have to produce some evidence of discrimination.  In Desert Palace, the Supreme Court held that a plaintiff could satisfy his initial burden in a mixed motive case by "present[ing] sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence that 'race, color religion, sex, or national origin was a motivating factor for any employment practice."   Desert Palace, 539 U.S. at 101 (citing 42 U.S.C. § 2000e-2).  Plaintiff

has failed to identify any evidence in his favor.  Thus, plaintiff cannot establish that FedEx Ground discriminatorily discharged him in violation of either Title VII or the PHRA under either a pretext or mixed motives theory.  Accordingly, FedEx Ground's motion for summary judgment of Count II will be granted.

        D.   <u>Count III - Retaliation</u>

       In Count III, plaintiff attempts to allege that, afer he complained of discrimination to the Human Resources Department, he was retaliated against.  Plaintiff's allegations are not at all clear, but he appears to attempt to argue that FedEx Ground investigated his separation from his prior employer in retaliation for his complaints of discrimination.  Plaintiff concedes that FedEx Ground took no action against him at the conclusion of their investigation.  Plaintiff also appears to argue that he was discharged in retaliation for his complaints of discrimination.

       To establish a <u>prima</u> <u>facie</u> case of retaliation, plaintiff must show that: (1) he engaged in conduct protected by Title VII; (2) contemporaneous with or after engaging in that conduct, his employer took an adverse action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action."  <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 340-41 (3d Cir. 2006).  The adverse action must be materially adverse.  <u>Burlington N. Sante Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).  In order for an action to be

21

"materially adverse" a plaintiff must show that a reasonable employee "well might [have been] dissuaded ... from making or supporting a charge of discrimination." Id.

The court of appeals has observed that "the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings ... [a]nd those who oppose discrimination made unlawful by Title VII ..." Moore v. Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006). Plaintiff must, however, "hold an objectively reasonable belief in good faith, that the activity they oppose is unlawful under Title VII." Id.

Here, even assuming that plaintiff engaged in protected activity by complaining of alleged co-worker harassment, the undisputed evidence of record establishes that FedEx Ground did not take any action against him, much less an adverse action, which causally linked to his complaints. The evidence is undisputed that FedEx Ground closed its investigation into plaintiff's employment history without taking any action against him.

Further, to the extent that plaintiff is claiming that he was discharged in retaliation for his complaints of discrimination, he has failed to provide any evidence of a causal link between the two events. In order to determine whether plaintiff has established a causal link, we look to both the temporal proximity of the protected activity and the adverse action and "the proffered evidence, looked at as a whole" to determine whether plaintiff has

22

adduced sufficient evidence to raise an inference of retaliation. LeBoon v. Lancaster Jewish Community Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007). If the "temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment." Id. At 232 (citing Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)). The court of appeals has held that if the temporal proximity is not unusually suggestive, we are to look to "other kinds of evidence that a plaintiff can proffer" such as "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus. Id.

Plaintiff complained in July of 2006 and was terminated in April of 2007. There is therefore, nothing unusually suggestive about the timing of his termination. Plaintiff has also not presented any other evidence to support an inference that he was terminated in retaliation for his complaints of discrimination. Accordingly, plaintiff's retaliation claim fails as a matter of law, and FedEx Ground's motion for summary judgment of Count III will be granted.

     E.   Rule 56(f) Motion

As noted above, even if we construe plaintiff's

statements in his responsive papers as a motion under Fed.R.Civ.P.
56(f), and excuse him from the affidavit requirement, he still must
comply with Fed.R.Civ.P. 56(e). Specifically, pursuant to
Fed.R.Civ.P. 56(e), a pro se plaintiff must provide an "affidavit
or other evidentiary material to dispute defendants' affidavit to
the contrary ... an adverse party may not rest upon mere
allegations in his pleadings, and any inconsistency does not give
rise to a disputed question of material fact." Tillman v. Lebanon
County Correctional Facility, 221 F.3d 410, 420 n. 10 (3d Cir.
2000).

Plaintiff has failed to explain how additional discovery
will aid his opposition to FedEx Ground's motion for summary
judgment. There is nothing in the record to suggest that any such
evidence exists. Further, plaintiff filed a   pro se motion to
compel in this case. See Doc. No. 35. It is clear from the
correspondence submitted by FedEx Ground that plaintiff did not
cooperate in narrowing his discovery requests as the court directed
him to. See Doc. No. 45 at Exhibit A. In fact, in the final
correspondence between plaintiff and counsel for FedEx Ground,
dated October 6, 2009, plaintiff stated that "[i]f I don't receive
these documents within the next couple of weeks, I will be forced
to ask judge (sic) Lancaster and the court fo compare (sic) your
client to produce the documents." Id. at page 3. Plaintiff failed
to do so. Despite his pro se status, plaintiff must follow the

24

Federal Rules of Civil Procedure, and the Local Rules of this court.  Riley v. Shinseki, 2009 WL 2957793 at *4 (W.D. Pa. Sept. 10, 2009)(quoting Thomas v. Norris, 2006 WL 2590488 at *4)(M.D. Pa. Sept. 8, 2006).

Plaintiff has also attempted in his pre-trial statement to amend his complaint to add claims for stress related injuries See Doc. no. 47 at pages 5-6.  Plaintiff's request is not consistent with the Federal Rules of Civil Procedure and/or the Local Rules and will therefore, be denied.

III. CONCLUSION

For the foregoing reasons, FedEx Ground's motion for summary judgment [doc. no. 38] will be granted.

An appropriate order follows.

25

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEO Z. TARR,                        )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    Civ. Act. No. 08-1454
                                    )
                                    )
FEDEX GROUND PACKAGE                )
SYSTEM, INC.,                       )
                                    )
            Defendant.              )

<u>ORDER</u>

AND NOW, this 28 day of January, 2010, upon consideration

of defendant's motion for summary judgment [doc. no. 38] and

plaintiff's response thereto, IT IS HEREBY ORDERED THAT the motion

is GRANTED.   IT IS FURTHER ORDERED THAT plaintiff's request to

amend his original claim, presented in his pre-trial statement, is

DENIED.

Judgment shall be entered in defendant's favor.

The Clerk of Court is directed to mark this matter as

closed forthwith.

BY THE COURT

_____, Chief J.

cc:  All Counsel of Record
     Leo Z. Tarr